[Civ. No. 10134. First Appellate District, Division Two.—June 3, 1936.]

CATHERINE G. KRIZMAN, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION, Respondent.

Breed, Burpee & Robinson for Petitioner.

Everett A Corten for Respondent.

STURTEVANT, J.—Claiming to be the surviving widow of Vincent Krizmanich, commonly called Krizman, on his death petitioner filed with the respondent board a petition to have her claim adjusted. The board made findings against her and ordered that she take nothing. The petitioner applied for a rehearing. The application was denied and she has applied to this court for a writ of review.

■ The application presents only one question. Was the petitioner the wife of the deceased within the meaning of section 14 of the Workmen's Compensation Act?

The petitioner's maiden name was Catherine Gwendolyn Helms. She married J. D. Collin, from whom she was divorced June 7, 1919. Vincent Krizmanich, commonly known as and called Vincent Krizman, while employed by the Anker Meat Company, met his death July 3, 1935. At that time he and the petitioner were living as man and wife at 291 Lester Avenue in Oakland. Since October or November, 1924, they had been so conducting themselves, but had occupied apartments at different addresses during that time. Each claimed to be the legal spouse of the other and so introduced each other, opened joint bank accounts, and purchased and conveyed real estate. Mr. Krizman so took out life insurance and carried the policy until the date of his death. Likewise he so applied for membership in Emeryville Post of Veterans of Foreign Wars of the United States, was admitted, and maintained his membership until his death. Prior to the date above mentioned the petitioner was employed as a telephone operator and Mr. Krizman was employed as a butcher. After the union above mentioned both continued to work. After a while the petitioner gave up her employment and for three years prior to the death of Mr. Krizman she was unemployed. Mr. and Mrs. Helms, the father and mother of the petitioner, own their home, but otherwise are without means. At all times after the said union Mr. Krizman contributed, as son-in-law, in food and funds from $15 to $20 a month toward their support.

The petitioner met Mr. Krizman about July 1, 1924. Soon afterwards they became engaged and announced the fact generally and in particular to the parents of the petitioner, to Mrs. Ohe, her landlady, and to Mr. and Mrs. Loveland, petitioner's intimate friends. In November they arranged to get married. Mr. Krizman wanted to have a party. Knowing some comrades who were in the liquor business in Reno, he arranged that the petitioner and he should go by train to Reno, get married, and have their party. They commenced the festivities in Oakland by playing cards with Mr. and Mrs. Ohe, having several drinks, and then the latter drove them to the midnight train and bid them Godspeed. On the train the couple had more drinks. On arriving in

Reno at about 4:30 P. M. they went to join Mr. Krizman's friends who had been advised of their expected arrival. In about two hours the couple went out to get married. Their friends accompanied them. The petitioner was not clear where they went, nor what they did, but she thought Mr. Krizman's friends produced the license, and that they were married by a justice of the peace—but she was not certain. She saw a paper produced which she believed to be a license, but she did not read it. On leaving that office petitioner testified she did not remember more until they awoke the next morning in a room in an hotel in Reno. That same day they took a train and returned to Oakland. In the course of a few days a large envelope came to Mr. Krizman. He opened it and said it was their marriage certificate. On arriving in Oakland they at once took a room in the house of Mrs. Ohe and continued to live together as man and wife until Mr. Krizman died. The legality of their marriage was never questioned by either of them nor by anyone else except the respondent board. As soon as they returned to Oakland each immediately advised his or her relatives and friends of the marriage at Reno. When the hearing in this proceeding was held it transpired that in the recorder's office of Washoe County, the county in which Reno is located, there is no record of the marriage of Vincent Krizman and Catherine G. Collin. No evidence was offered that there was no record of the marriage of Vincent Krizman*ich* and Catherine G. Collin. No evidence was offered that a marriage license was not issued to Vincent Krismanich and Catherine G. Collin or that they were not married. The record contains no single conflict in the evidence on any fact hereinabove set forth.

Among others, the respondent board made the following finding: "2. Catherine G. Krizman was *not* legally married to the employee at the time of the injury, and was *neither* his wife *nor* a member of his household in good faith within the meaning of the Workmen's Compensation Act at the time of said injury. The commission further finds that at the time of the alleged marriage that Catherine G. Krizman was fully familiar with the requisites of a valid marriage, and that she either had knowledge or is chargeable with knowledge that *no* valid ceremony was performed." The negative words therein contained are not supported by a scintilla of evidence. It is presumed "That a man and woman deporting themselves as husband and wife have entered into a

lawful contract of marriage." (Code Civ. Proc., sec. 1963, subd. 30.) All of the evidence introduced was to the same effect. The fact that the marriage certificate was not recorded, if it be a fact, did not invalidate the marriage. Nor was such fact a controlling factor in the case. The case clearly falls within the doctrine stated in such cases as *Temescal Rock Co.* v. *Industrial Acc. Com.*, 180 Cal. 637 [182 Pac. 447, 13 A. L. R. 683], and *Louden* v. *Industrial Acc. Com.*, 105 Cal. App. 65 [286 Pac. 1045].

 Something is said about "good faith". We are unable to ascertain why. Every incident above recited goes to show "good faith" and to disprove "bad faith". He who would assert "bad faith" should be able to point to some evidence proving or tending to prove "bad faith". Every pertinent presumption is against it. (Code Civ. Proc., sec. 1963.)

As there was no evidence that Vincent Krizmanich, commonly called Krizman, and the petitioner were not duly married, the award is annulled and the proceeding is remanded for further action not inconsistent with this opinion.

Nourse, P. J., and Spence, J., concurred.